**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| JAVIER MACIAS and JOY HOAR, individuals, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Case No. 2:16-cv-00245-J |
| BF WASTE SERVICES OF TEXAS, LP, REPUBLIC SERVICES ALLIANCE GROUP, INC., a Texas Corporation, and REPUBLIC SERVICES, INC., d/b/a REPUBLIC WASTE SERVICES GROUP OF TEXAS, INC., a Delaware Corporation, | § § § § § § § § | |
| Defendants. | § § | |

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR OPPOSITION TO PLAINTIFFS'**
**MOTION FOR ORDER AUTHORIZING NOTICE TO POTENTIAL PLAINTIFFS**
**SIMILARLY SITUATED PURSUANT TO 29 U.S.C. § 216(b)**

DATED: April 3, 2017

Respectfully submitted,

SEYFARTH SHAW LLP

By: /s/ Esteban Shardonofsky
Esteban Shardonofsky
N.D. Tex. Bar No. 615928
Texas State Bar No. 24051323
sshardonofsky@seyfarth.com
Austin J. Brayley
N.D. Tex. Bar. No. 2736378
Texas State Bar No. 24094556
abrayley@seyfarth.com
700 Milam Street, Suite 1400
Houston, Texas  77002-2812
Telephone: (713) 225-2300
Facsimile:  (713) 225-2340

Adair Buckner
Attorney at Law
Texas State Bar No. 03307800
adair@adairbuckner.com
301 S. Polk, Suite 422
Amarillo, Texas  79101

ATTORNEYS FOR DEFENDANTS

## TABLE OF CONTENTS

FACTUAL BACKGROUND ................................... **ERROR! BOOKMARK NOT DEFINED.**

    I.      Defendants' Operations ......................................**Error! Bookmark not defined.**

    II.    Defendants' Timekeeping And Meal-Break Policies**Error! Bookmark not defined.**

ARGUMENT ........................................................ **ERROR! BOOKMARK NOT DEFINED.**

    I.      Conditional Certification Is Not Automatic..........**Error! Bookmark not defined.**

    II.    Conditional Certification Of Plaintiffs' Claims Is Inappropriate .......................... 9

        A.     Plaintiffs' Motion Should Be Denied Because Plaintiffs' Proposed Collective Action Substantially Overlaps With The Conditionally-Certified Collective Action In Taylor ......................................... 9

        B.     Plaintiffs Have Not Established That They And Other Members Of The Proposed Collective Action Are Similarly Situated**Error! Bookmark not defined.**

            1.    Plaintiffs Have Not Established That They Are Similarly Situated To All Non-Exempt Employees At The Amarillo Facility ........................................................................ 13

            2.    Plaintiffs Are Not Similarly Situated To Other Drivers At The Amarillo Facility................................................... 18

        C.     Certification Would Make This Case Unmanageable Because It Will Require Highly Individualized Inquiries Regarding Liability And Defenses. ........................................................................ 21

    III.    Defendants Object To Plaintiffs' Proposed Form Of Notice............................... 24

CONCLUSION.................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adair v. Wis. Bell, Inc.*,
   2008 WL 4224360 (E.D. Wis. Sept. 11, 2008) .......................................................................21

*Akins v. Worely Catastrophe Res., LLC*,
   921 F. Supp. 2d 593 (E.D. La. 2013) .....................................................................................12

*Alvarez v. Gold Belt, LLC*,
   2011 WL 1337457 (D.N.J. Apr. 7, 2011) ..............................................................................12

*Austin v. Onward, LLC*,
   161 F. Supp. 3d 457 (S.D. Tex. 2015) ....................................................................................8

*Basco v. Wal-Mart Stores, Inc.*,
   2004 WL 1497709 (E.D. La. July 2, 2004) ...........................................................................19

*Basco v. Wal-Mart Stores, Inc.*,
   216 F. Supp. 2d 592 (E.D. La. 2002) .....................................................................................23

*Behnken v. Luminant Min. Co., LLC*,
   997 F. Supp. 2d 511 (N.D. Tex. 2014) ..................................................................................24

*Blaney*,
   2011 WL 4351631 ............................................................................................................17, 18

*Bosley v. Chubb Corp.*,
   2005 WL 1334565 (E.D. Pa. June 3, 2005) ............................................................................7

*Camilotes v. Resurrection Health Care Corp.*,
   286 F.R.D. 339 (N.D. Ill. 2012)............................................................................................17

*Carey v. 24 Hour Fitness USA, Inc.*,
   No. H-10-3009, 2012 U.S. Dist. LEXIS 146471 (S.D. Tex. Oct. 11, 2012) ..........................22

*Colson v. Avnet, Inc.*,
   687 F. Supp. 2d 914 (D. Ariz. 2010) ......................................................................................8

*Cruz v. ConocoPhillips*,
   2016 WL 7106363 (S.D. Tex. Sept. 23, 2016) ......................................................................25

*Desilva v. N. Shore-Long Island Jewish Health Sys., Inc.*,
   27 F. Supp. 3d 313 (E.D.N.Y. 2014) .....................................................................................16

*Diaz v. Elecs. Boutique of Am., Inc.*,
    No. 04-CV-840E(SR), 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005) ...................................22

*England v. New Century Fin. Corp.*,
    370 F. Supp. 2d 504 (M.D. La. 2005)......................................................................................24

*Fox v. Western Talk, L.C.*,
    No. H-12-3726, 2013 U.S. Dist. LEXIS 153892 (S.D. Tex. Oct. 28, 2013) .........18, 21, 24, 25

*Heaps v. Safelite Solutions, LLC*,
    No. 2:10-CV-729, 2011 U.S. Dist. LEXIS 40089 (S.D. Ohio Apr. 5, 2011) ..........................25

*Hickson v. U.S. Postal Serv.*,
    2010 WL 3835887 (E.D. Tex. July 22, 2010) ............................................................7, 8, 16

*Hoffman La-Roche, Inc. v. Sperling*,
    495 U.S. 165 (1989)..........................................................................................................7, 9

*Int'l Fidelity Ins. Co. v. Sweet Little Mexico Corp.*,
    665 F.3d 671 (5th Cir. 2011) .........................................................................................10, 11

*Jones v. Xerox Commercial Solutions, LLC*,
    No. 4:13-cv-650, 2013 U.S. Dist. LEXIS 158793 (S.D. Tex. Nov. 6, 2013) ....................22, 23

*LaFleur v. Dollar Tree Stores, Inc.*,
    2012 WL 4739534 (E.D. Va. Oct. 2, 2012)..............................................................................12

*Lopez v. Bombay Pizza Co.*,
    No. H-11-4217, 2012 U.S. Dist. LEXIS 158077 (S.D. Tex. Nov. 5, 2012) ............................25

*MacGregor v. Farmers Ins. Exch.*,
    2011 WL 2981466 (D.S.C. July 22, 2011) ........................................................................16, 18

*Marshall v. Eyemasters of Tex., Ltd.*,
    272 F.R.D. 447 (N.D. Tex. 2011) ...............................................................................................9

*Medina v. Bros. Beherman Hwy., Inc.*,
    2015 WL 3679534 (E.D. La. June 12, 2015)..............................................................10, 11, 12

*Michael v. Bloomberg L.P.*,
    No. 14–cv–2657 (TPG), 2015 WL 1810157 (S.D.N.Y. Apr. 17, 2015)..................................24

*Mooney v. Aramco Servs. Co.*,
    54 F.3d 1207 (5th Cir. 1995) ....................................................................................................22

*Nieddu v. Lifetime Fitness, Inc.*,
    977 F. Supp. 2d 686 (S.D. Tex. 2013) .................................................................................16, 17

iv

*Ortiz v. Panera Bread Co.*,
　　2011 WL 3353432 (E.D. Va. Aug. 2, 2011)............................................................12

*Purdham v. Fairfax Cnty. Pub. Schs.*,
　　629 F. Supp. 2d 544 (E.D. Va. 2009) ....................................................................8

*Saleen v. Waste Mgmt., Inc.*,
　　2009 WL 1664451 (D. Minn. June 15, 2009).............................................. *passim*

*Save Power Ltd. v. Syntek Fin. Corp.*,
　　121 F.3d 947 (5th Cir. 1997) ........................................................................10, 11

*Taylor v. Republic Services, Inc.*,
　　No. 2:16-cv-502 (S.D. Tex.) .................................................................9, 10, 11, 12

*Thompson v. Speedway SuperAmerica LLC*,
　　2009 WL 130069 (D. Minn. Jan. 20, 2009).............................................................18

*Tussing v. Quality Res., Inc.*,
　　2009 WL 4350253 (M.D. Fla. Nov. 25, 2009) .......................................................20

*Velasquez v. HSBC Fin. Corp.*,
　　266 F.R.D. 424 (N.D. Cal. 2010)............................................................................8

*Walker v. Serv. Corp. Int'l*,
　　2011 WL 1370575 (W.D. Va. Apr. 12, 2011) ........................................................11

*West Gulf Mar. Ass'n v. ILA Deep Sea Local 24*,
　　751 F.2d 721 (5th Cir. 1985) ................................................................................10

*West v. Border Foods, Inc.*,
　　2006 WL 1892527 (D. Minn. July 10, 2006) .......................................................8, 9

*White v. Baptist Mem'l Health Care Corp.*,
　　699 F.3d 869 (6th Cir. 2012) .........................................................................16, 17

*White v. Osmose*,
　　204 F. Supp. 2d 1309 (M.D. Ala. 2002) ...............................................................15

*Williams v. Accredited Home Lenders, Inc.*,
　　No. 1:05-CV-1681-TWT, 2006 U.S. Dist. LEXIS 50653 (N.D. Ga. July 25,
　　2006) .........................................................................................................14, 15, 22

**Statutes**

29 U.S.C. § 216..............................................................................................................7

29 U.S.C. § 216(b) .............................................................................................. *passim*

29 U.S.C. § 254.................................................................................................................................23

**Other Authorities**

Fed. R. Civ. P. 23...............................................................................................................................7

Plaintiffs—one current and one former waste disposal driver at Defendants'[1] Amarillo, Texas facility—claim that even though Defendants' policies and procedures (a) prohibit drivers from working off-the-clock (including before and after their routes), (b) require drivers to take an uninterrupted, unpaid 30-minute meal period each day, during which time they are relieved from work, and (c) provide a process for tracking and reporting all of their hours worked and reversing the automatic 30-minute meal period deduction if they do not take their meal period, they nonetheless were "not paid for all the time [they] spent working" in violation of the Fair Labor Standards Act.  Even though Plaintiffs worked only as drivers and the issues about which they complain (like automatic meal break deductions and duties related to truck inspections and fueling) apply *only to drivers*, Plaintiffs nonetheless seek to certify a collective action involving all non-exempt employee (not just drivers) at Defendants' Amarillo facility.[2]  Plaintiffs' motion should be denied for three fundamental reasons.

First, there is already a similar case pending in the Southern District of Texas that was recently conditionally certified as a collective action under the FLSA and which substantially overlaps with the class of drivers that Plaintiffs seek to certify.  All current drivers at the Amarillo facility and former drivers going back three years will soon receive notice of that lawsuit and have an opportunity to assert their FLSA claims in that case.  Although the FLSA does not preclude Plaintiffs from maintaining this lawsuit as an independent, individual action, certification of a duplicative collective action would be wasteful and confusing, and would contravene the spirit and intent of the FLSA and first to file rule to avoid duplicative litigation.

Second, Plaintiffs' motion should be denied because they have not demonstrated that they

---

[1] Plaintiffs' employer, and the only proper Defendant in this action, is BFI Waste Services of Texas, LP.

[2] Although Plaintiffs appear in some of their filings to indicate an intention to include employees at multiple facilities, *see, e.g.,* Pl. Mot. at 1 (identifying "all employees at Defendants' Amarillo facilities"), Defendants operate only one waste hauling facility in Amarillo, Texas. *See* Ex. 1, McMahon Decl., ¶ 3.

and the proposed collective-action members together were victims of a common policy or plan that violates the FLSA.   Rather, in support of their motion, Plaintiffs supply only their own vague, conclusory, and identical declarations, in which allege that they were "generally not compensated" for time spent before or after their shifts dedicated to "repairs, loading boxes, wait, clean, etc." and for "fuel/weight time."   Their declarations also state that on one or more unspecified occasion Plaintiffs worked through lunch without pay.   Yet *neither* declarant explains *why* he or she allegedly was not compensated for working through meal breaks (for example, whether they requested but were denied reversal of the automatic deduction) or for performing pre- or post-trip work off the clock, let alone identify an Amarillo-wide policy that violates the FLSA as required to support conditional certification.   Plaintiffs also fail to establish that they are similarly situated to other non-exempt employees in vastly different job categories (including Dispatchers, Maintenance Shop Technicians, Welders, Sales Coordinators, and Billing Processors), or even to other drivers at the Amarillo facility.

Third, certification is also improper because a determination of liability for each putative member's claim would involve numerous, highly individualized and fact-intensive questions.   In other words, to determine liability, the Court would need to examine the individual circumstances surrounding each driver or other non-exempt employee—rather than a uniform policy or practice—to determine whether, to what extent, and why each employee worked off the clock on any given shift or skipped a meal break, and whether a particular manager or supervisor was aware of this but nevertheless ignored the alleged off-the-clock activities.   Individualized inquiries will also be required with regard to Defendants' defenses and individual damages.   The case would thus devolve into an unmanageable series of mini-trials.   As explained below, the Court should deny Plaintiffs' motion and require them to proceed on an individual basis.

## FACTUAL BACKGROUND

### I.      Defendants' Operations in Amarillo

Defendant BFI Waste Services of Texas, LP owns and operates a waste-hauling/disposal
facility in Amarillo, Texas.  That facility is managed by a General Manager, who supervises an
Operations Manager.  The Operations Manager oversees hauling operations and directs various
supervisors who are, in turn, each responsible for waste disposal drivers in two lines of business:
commercial and industrial (a/k/a "roll-off").  Drivers like Plaintiffs spend most of their work
time on their routes *unsupervised*.[3]  While Defendants typically dictate what time drivers start
their shifts, the drivers decide when and where to stop for rest breaks, when and where to stop for
lunch, and how fast they work their routes (within safety limits).[4]  BFI Waste Services of Texas
also employs at the Amarillo facility other individuals in a variety of non-exempt positions,
including Dispatchers, Maintenance Shop Technicians, Welders, Sales Coordinators, and Billing
Processors.[5]

### II.     Defendants' Timekeeping And Meal-Break Policies And Procedures

Defendants have clear policies and procedure requiring all non-exempt employees to
record all hours worked and prohibiting all non-exempt employees from performing any work
"off the clock."  Those timekeeping policies[6] provide that:

- Drivers and other non-exempt employees "are prohibited from performing any 'Off-the-Clock' work (i.e., working without reporting the time worked)."

- "All [drivers and other non-exempt employees] must submit a daily recording of hours worked . . . The employee's arrival, departure, and the minimum 30-minute meal period must be recorded accurately through the card swipe, time card or other designated timekeeping system."

---

[3] *See* Ex. 1, McMahon Decl., ¶ 6.

[4] *See id.*

[5] *See* Ex. 1, McMahon Decl., ¶ 4.

[6] Ex. 1, McMahon Decl., ¶ 7, Ex. A, Timekeeping Policy pp. 3-4.

- "All [drivers and other non-exempt employees] are required to report all time worked . . . including any non-scheduled or overtime hours for which an employee failed to request or receive pre-approval."

- Drivers and non-exempt employees "may not . . . work during a minimum 30-minute meal period . . . unless … such time is properly recorded according to [the timekeeping policy]."

These timekeeping policies also prohibit managers and supervisors from requiring or condoning employees to work off the clock.[7]   Moreover, drivers and other non-exempt employees receive and are trained on the timekeeping policies at the beginning of their employment and periodically thereafter by human resources personnel, and through informal reminders from managers and supervisors.[8]

Defendants also require all non-exempt employees, including drivers, to take an uninterrupted, unpaid 30-minute meal period each day, during which time the employee is prohibited from performing work.[9]   Under Defendants' Meal Period Policy, each non-exempt employee must "review his or her time card report, ensure that it is accurate," and either correct it or certify that his or her hours worked have been correctly reported, including with respect to meal periods.[10]   Employees are provided a copy of the Meal Period Policy at the beginning of employment and sign an acknowledgement indicating they have received, read, and agree to abide by it.[11]   In addition, employees are trained on the Meal Period Policy and receive regular reminders of the policy throughout their employment.[12]

Although drivers punch a time clock at the beginning and end of their shifts, they do not have access to a time clock during their meal periods because they typically eat lunch on their

---

[7] *See id.* ("Supervisors are responsible for ensuring that no one instructs, encourages, or allows any employee to work Off-the-Clock, to incorrectly report hours worked, or to alter another employee's time records.").

[8] *See* Ex. 1., McMahon Decl., ¶ 7.

[9] *See* Ex. 1, McMahon Decl., ¶ 8, Ex. B, Meal Period Policy pp. 2-3.

[10] *Id.* at 3.

[11] For example, a copy of Plaintiff Joy Hoar's Meal Break Acknowledgement is attached as Exhibit 2.

[12] *See* Ex. 1, McMahon Decl., ¶ 8.

routes, unsupervised, and away from the Amarillo facility.[13]  Accordingly, and because drivers are expected to take a 30-minute meal break each day, they are subject to a corresponding automatic 30-minute deduction from their daily electronically-recorded time for those meal periods.  Defendants' policy dictates, however, that "[i]f a [driver] subject to an automatic 30 minute deduction does not take an uninterrupted 30-minute meal period, the deduction will be reversed and the employee will be compensated for this time worked."[14]  Indeed, those deductions are made *only after* drivers electronically verify or manually sign an attestation confirming that they took an uninterrupted meal break or noting the dates when they did not.[15]  Drivers must advise their supervisor or other manager if they miss a meal period or if they do not take an uninterrupted 30-minute meal period so the deduction can be reversed and their time adjusted accordingly.[16]

There is an additional system in place at the Amarillo facility designed to prevent drivers from performing work off the clock before and after their routes.  During the entire statutory time period, the facility has used a locking "peg board" to store truck keys and drivers' time cards.  In order to retrieve the key to a truck at the beginning of their shift, drivers must first clock in using their time card and insert the time card into the peg board, which then releases the key to the driver.[17]  The time card must be physically locked in place on the board to release the truck key.[18]  In other words, the drivers are required to clock in before obtaining their truck keys and performing any work on their routes, including pre-trip safety inspections and other truck-related activities.  At the end of a driver's shift, he or she must first return the truck key before

---

[13] *See* Ex. 1, McMahon Decl., ¶ 9.

[14] *See* Ex. 1, McMahon Decl., ¶ 8, Ex. B pp. 2-3.

[15] *See* note 20 and accompanying text.

[16] *See* Ex. 1, McMahon Decl., ¶ 7, Ex. A p. 3.

[17] *See* Ex. 1, McMahon Decl., ¶ 5.

[18] *See id.*

being able to release his or her time card from the peg board, and then clock-out for the day.[19]

This system effectively prevents drivers from obtaining their truck keys, accessing their trucks,

or otherwise performing any pre- or post-trip work without being clocked in to the timekeeping

system.[20]  This evidence belies Plaintiffs' pre- and post-shift claims.

Moreover, Defendants enforce their timekeeping and meal break policies in various ways

to ensure that all non-exempt employees are paid for all time worked, including overtime.  First,

if an employee forgets or has a problem clocking in or out of the timekeeping system or

recording his time, the employee's time entry will be adjusted to accurately reflect his/her

working time.[21]  Second, employees are required to review and verify the accuracy of their work

hours; when an employee clocks out on the electronic Kronos Timeclock System at the end of a

weekly pay period, he/she must certify or reject the following attestation, which is presented in

both English and Spanish:[22]

> I CERTIFY THAT I HAVE CAREFULLY REVEIWED MY PUNCH TIME ABOVE AND
> THAT IT IS ACCURATE.  I ALSO CERTIFY THAT I HAVE TAKEN AN
> UNINTERRUPTED MEAL PERIOD OF AT LEAST 30 MINUTES EACH DAY OR THAT
> MY TIME CARD HAS BEEN ADJUSTED FOR ALL MISSED MEAL PERIODS.  I
> UNDERSTAND THAT IT WOULD BE A SERIOUS VIOLATION OF COMPANY POLICY
> FOR ME TO WORK "OFF THE CLOCK"  (PERFORM ANY WORK THAT IS NOT
> REPORTED). I HAVE NOT WORKED "OFF THE CLOCK" OR INCORRECTLY
> REPORTED MY WORK TIME, ABSENCES OR MEAL PERIODS. I WILL SELECT THE
> REJECT BUTTON BELOW IF THE ABOVE INFORMATION IS NOT CORRECT.

If an employee does not believe his time records are correct (including because he/she did

not take an uninterrupted meal period of at least 30 minutes each day) and/or rejects the

attestation on the electronic timeclock, the employee must complete a time card correction

request, which allows the employee to alert his/her manager that the time record is not accurate

and the reason(s) for the inaccuracy, including that the employee incorrectly reported his/her

working time or meal periods, was instructed to incorrectly report working time or meal periods,

---

[19] *See id.*

[20] *See id.*

[21] *See* Ex. 1, McMahon Decl., ¶ 7.

[22] *See* Ex. 1, McMahon Decl., ¶ 10, Ex. C, Kronos Attestation.

or did not take a meal period of at least 30 minutes on particular dates.[23]

Finally, Defendants do not request, require, encourage, or permit drivers or any other non-exempt employees to work off the clock or through their meal periods without pay. Indeed, per policy, if a driver notifies a supervisor or manager that the driver was unable to take an uninterrupted 30-minute meal period on any particular day, the automatic deduction will be reversed for that day and the driver will be compensated for that time worked.[24]

These policies and procedures at the Amarillo facility reinforce the conclusion that neither drivers nor other non-exempt employees are similarly situated to Plaintiffs, and that there is no common policy or plan that requires any employees (including drivers) to work during their unpaid meal breaks or perform uncompensated pre- or post-trip work.

## ARGUMENT

### I.    Conditional Certification Is Not Automatic

Conditional certification of a collective action is not the rubber stamp that Plaintiffs suggest it is.[25] Indeed, conditional certification "is not mandatory," *Hickson v. U.S. Postal Serv.*, 2010 WL 3835887, at *5 (E.D. Tex. July 22, 2010), and "automatic preliminary class certification is at odds with the Supreme Court's recommendation to 'ascertain the contours of the § 216 action at the outset,'" *Bosley v. Chubb Corp.*, 2005 WL 1334565, at *3-4 (E.D. Pa. June 3, 2005) (quoting *Hoffman La-Roche, Inc. v. Sperling*, 495 U.S. 165, 171-72 (1989)). Granting conditional certification can result in "considerable cost to the parties and a court to go forward with a collective action," including, "at a minimum, the expense of sending out notice to the putative collective members, the substantial widening of discovery, and the burden on the

---

[23] *See* Ex. 1, McMahon Decl., ¶ 11, Ex. D, Time Card Correction Request.

[24] *See* Ex. 1, McMahon Decl., ¶ 8, Ex. B.

[25] Although Plaintiffs spend much of their brief addressing the requirements for class action certification under Fed. R. Civ. P. 23, Defendants focus on the applicable standard for conditional certification of a FLSA action pursuant to § 216(b).

courts of administering the [potentially] thousands of claims brought by opt-ins nationwide." *Saleen v. Waste Mgmt., Inc.*, 2009 WL 1664451, at *8 (D. Minn. June 15, 2009).  Accordingly, to succeed in their motion, Plaintiffs must demonstrate that they and the putative members of the collective are "similarly situated" and that collective treatment of the claims is appropriate.  *See Austin v. Onward, LLC*, 161 F. Supp. 3d 457, 463-64 (S.D. Tex. 2015).  But if "the action arises from circumstances purely personal to the plaintiff[s] and not from any generally applicable rule, policy, or practice" that violates the FLSA, conditional certification should be denied.  *Id.* at 464.

Although the burden at this stage "is not onerous, . . . it is also not invisible; mere allegations will not suffice, and some factual evidence is necessary." *Purdham v. Fairfax Cnty. Pub. Schs.*, 629 F. Supp. 2d 544, 548 (E.D. Va. 2009); *see Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 929-30 (D. Ariz. 2010) (conditional certification is "by no means automatic" and "the district court cannot function as a rubber stamp for any and all claims that come its way under this statute").  The evidence offered to support conditional certification cannot be "conclusory" and must be based on personal knowledge, *West v. Border Foods, Inc.*, 2006 WL 1892527, at *6 (D. Minn. July 10, 2006), and "unsupported assertions of FLSA violations are not sufficient to meet Plaintiff's burden," *Velasquez v. HSBC Fin. Corp.*, 266 F.R.D. 424, 427 (N.D. Cal. 2010).  *See Hickson*, 2010 WL 3835887, at *6 ("the preliminary factual showing must be based upon competent evidence in order to avoid stirring up unwarranted litigation").  Instead, Plaintiffs must provide "detailed allegations supported by declarations which successfully engage [Defendant's declarations] to the contrary." *Colson*, 687 F. Supp. 2d at 928.

Even if Plaintiffs had meet their burden—which they have not—the Court has discretion to deny certification when, as in this case, the claims "cannot be adjudicated efficiently" as a collective action.  *Syrja v. Westat, Inc.*, 756 F. Supp. 2d 682, 686 (D. Md. 2010); *Hickson*, 2010

WL 3835887, at *15 ("The power to authorize notice must be exercised with discretion and only in appropriate cases."). "To create a collective action class, including the cost associated with that when a Court is convinced that there is insufficient support for the same prior to certification would be an exercise in futility and wasted resources for all parties involved." *Basco v. Wal-Mart Stores, Inc.*, 2004 WL 1497709, at *5 (E.D. La. July 2, 2004); *see also Blaney v. Charlotte-Mecklenburg Hosp. Auth.*, No. 2011 WL 4351631, at *10 (W.D.N.C. Sept. 16, 2011) ("The purpose behind collective actions is to allow for a streamlined and efficient adjudication of the claims of similarly situated plaintiffs . . . [T]he Court need not [conditionally] certify the action and facilitate notice where, based on the same record available to it presently, it would inevitably decertify the action in a month's time.").

As detailed below, conditional certification is inappropriate because (a) Plaintiffs' proposed collective action substantially overlaps with a collective action that has already been conditionally certified, which precludes a separate collective action in this case; (b) Plaintiffs have failed to establish that they and the individuals they seek to represent are similarly situated or were subject to a common policy or plan that violates the FLSA; and (c) determinations regarding liability and defenses would involve numerous, highly individualized and fact-intensive questions. Accordingly, Plaintiffs' motion should be denied.

## II.      Conditional Certification Of Plaintiffs' Claims Is Inappropriate

### A.      Plaintiffs' Motion Should Be Denied Because Plaintiffs' Proposed Collective Action Substantially Overlaps With The Conditionally-Certified Collective Action In *Taylor*

Plaintiffs ask this Court to conditionally certify a collective action pursuant to 29 U.S.C. § 216(b) to include all non-exempt employees, including all current and former drivers, who worked at Defendants' Amarillo, Texas facility after November 10, 2013. An important function of conditional certification of a collective action is the avoidance of multiple lawsuits where

numerous employees have allegedly been harmed by the same violation.  *See Hoffman-La Roche*, 493 U.S. at 170 ("The judicial system benefits by the efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity."). Certification here would not advance the purpose and function of § 216(b) because there already is a conditionally certified collective action pending in the Southern District of Texas, which encompasses the proposed collective of Amarillo drivers and asserts similar FLSA claims.  More specifically, on February 24, 2017, the court in *Taylor v. Republic Services, Inc.*, No. 2:16-cv-502 (S.D. Tex.) conditionally certified a collective action consisting of "all waste disposal drivers employed by Republic Services, Inc. and/or any of its subsidiaries . . . anywhere in the United States other than North or South Carolina, at any time during the last three years." Pursuant to this order, all current and former drivers at the Amarillo facility will soon receive notice of the *Taylor* lawsuit and have an opportunity to assert their FLSA claims in that case. Because Plaintiffs' proposed collective is duplicative of the previously-filed and conditionally certified FLSA action in *Taylor*, Plaintiffs' motion for conditional certification should be denied and Plaintiffs should be required to pursue their claims only on an individual basis.

Pursuant to the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the two cases substantially overlap.  *Int'l Fidelity Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 677 (5th Cir. 2011); *Medina v. Bros. Beherman Hwy., Inc.*, 2015 WL 3679534, at *2 (E.D. La. June 12, 2015).  "The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."  *West Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 (5th Cir. 1985); *Medina*, 2015 WL 3679534, at *2.  The rule "applies where related cases are

pending before two judges in the same district . . . as well as where related cases have been filed in different districts." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997). The cases need not be identical; there need only be a likelihood of substantial overlap between the cases. *Id.*; *Medina*, 2015 WL 3679534, at *2 ("[T]he second filed court need only determine whether there is a likelihood of substantial overlap."). To determine whether the issues substantially overlap, courts look to whether the core issues are the same, or if much of the proof adduced in the cases would likely be identical. *Int'l Fidelity*, 665 F.3d at 678

Here, "the principles underlying the first to file rule—the avoidance of duplicative litigation and the interests of judicial economy—require the Court to deny [Plaintiffs'] motion to certify" a collective action. *Medina*, 2015 WL 3679534, at *3. To start, Plaintiffs in this case and the plaintiffs in *Taylor* both assert claims under the FLSA, allege they were not paid for time spent working through meal breaks based on the use of an automatic meal deduction policy, and seek damages related to an alleged failure to pay employees overtime wages as required by the FLSA. *See id.* (finding substantial overlap between cases where "both actions seek damages related to defendants' alleged failure to pay their employees overtime wages as required by the FLSA"). Further, Plaintiffs' proposed collective in this case substantially overlaps with the conditionally certified collective in *Taylor*. *See Walker v. Serv. Corp. Int'l*, 2011 WL 1370575, at *9 (W.D. Va. Apr. 12, 2011) (finding "substantial overlap because the proposed Plaintiff Class here is completely encompassed within the conditionally certified class in [the previously-filed action"). Indeed, the conditionally-certified collective in *Taylor* consists of all waste disposal drivers employed by Republic and/or its subsidiaries anywhere in the United States, which necessarily includes all current and former waste disposal drivers at the Amarillo facility (*i.e.*, all of the drivers in Plaintiffs' proposed collective). In other words, any driver who is a potential

opt-in plaintiff to *this* action also is a potential opt-in plaintiff in the *Taylor* action.  As such, each individual driver in Plaintiffs' putative collective is among the class of potential opt-in plaintiffs who soon will receive notice of, and an opportunity to join, the *Taylor* action.[26]  Under these circumstances, there is no purpose whatsoever to be served in granting Plaintiffs' motion and allowing two overlapping collective actions to proceed.  *See Akins v. Worely Catastrophe Res., LLC*, 921 F. Supp. 2d 593, 600 (E.D. La. 2013) ("[N]o purpose would be served by allowing two collective actions based on the same claims to proceed concurrently, with the attendant increased expense for defendants, the risk of confusing the group members about their legal options, the possibility of inconsistent rulings by two courts and the waste of judicial resources.").

Allowing a collective action in this case would be duplicative and wasteful of judicial resources, would result in confusion among members of the putative collective who receive court-approved notices in both *Taylor* and this case, would contravene the spirt and intent of the first to file rule, and would have the potential for inconsistency in the determination of the legal issues.  *Medina*, 2015 WL 3679534, at *3.  "Accordingly, although the FLSA does not preclude [Plaintiffs] from maintaining an independent, individual action, [Plaintiffs are] not entitled to conditional certification of a class that is entirely duplicative of the conditionally certified class in [*Taylor*]."  *Id.* (denying motion for conditional certification).[27]  "Indeed, to allow [Plaintiffs] to seek conditional certification under these circumstances would not only lead to likely

---

[26] The parties and the Court in *Taylor* are finalizing details related to the conditional certification order, notice, and consent form.  *See* Case No. 2:16-cv-502 (S.D. Tex.), Dkt. 151, 152, 156, 157.

[27] *See also LaFleur v. Dollar Tree Stores, Inc.*, 2012 WL 4739534, at *8 (E.D. Va. Oct. 2, 2012) ("To permit FLSA claims to proceed in this case as to [plaintiff-employees] would be duplicative and wasteful and would directly contravene the spirit and intent of the 'first to file' rule, particularly with respect to FLSA collective actions . . . as any putative collective members can opt-in to the [previously filed] action."); *Ortiz v. Panera Bread Co.*, 2011 WL 3353432, at *2 (E.D. Va. Aug. 2, 2011) ("The first-to-file rule is particularly appropriate in the context of competing FLSA collective actions, which threaten to present overlapping classes, multiple attempts at certification in two different courts, and complicated settlement negotiations."); *Alvarez v. Gold Belt, LLC*, 2011 WL 1337457, at *2 (D.N.J. Apr. 7, 2011) ("Because the [previously filed] action has been conditionally certified, plaintiff must choose between opting in to that action, or continuing independently with his own action here.  Certification of a separate collective action is not available to plaintiff at this time" and plaintiff's motion for conditional certification "must be denied.").

confusion and juridical waste, but would also frustrate the underlying rationale for using the [collective] action mechanism." *Medina*, 2015 WL 3679534, at *3 (quotation omitted). Accordingly, Plaintiffs' motion for conditional certification should be denied, and the Court should decline to facilitate notice to the proposed collective.

### B.   Plaintiffs Have Not Established That They And Other Members Of The Proposed Collective Action Are Similarly Situated

To obtain conditional certification, Plaintiffs must show that they are similarly situated to the class of employees they seek to represent.  Here, Plaintiffs allege that they and all other current and former non-exempt employees at the Amarillo facility during the last three years are together the victims of a common policy or plan that resulted in them receiving less overtime pay and therefore violated the FLSA.  They fail to make the required showing, however, in at least two key ways.  First, Plaintiffs fail to show that the policies about which they complain—Defendants' policies requiring <u>only drivers</u> to take a 30-minute meal period each day with a corresponding automatic deduction to their work hours, and to perform certain pre- and post-trip vehicle inspections and other truck-related work—are common to all members of the proposed collective and cause them to work off the clock or underreport hours worked.  Second, Plaintiffs' only allegations that conceivably could raise a right to relief are not based on a common policy or plan, or otherwise susceptible to common proof (even among drivers) but, instead, will require analysis of each employee's highly-individualized experiences and Defendants' individualized defenses to each claim, thus making a collective trial inefficient and unmanageable.

### 1.   Plaintiffs Have Not Established That They Are Similarly Situated To All Non-Exempt Employees At The Amarillo Facility

Plaintiffs generally have alleged that they and other non-exempt employees in various positions at the Amarillo facility are "similarly situated" because they were all subject to Defendants' uniform pay policy.  Pl. Mem. 4-5.  Other than making this conclusory statement

wholly unsupported by any sworn testimony, Plaintiffs have not articulated (let alone established with any degree of specificity) how they are similarly situated to employees in the vastly different other non-exempt job categories including Dispatchers, Maintenance Shop Technicians, Welders, Sales Coordinators, and Billing Processors.  In fact, those other employees are not subject to the same pay policies as Plaintiffs (*i.e.*, they are not subject to the automatic meal break deduction) and have vastly different job duties (*i.e.*, unlike drivers they are not required to perform pre- and post-trip inspection and related work on the trucks).  As demonstrated below, Plaintiffs cannot meet their burden.

As described above, Defendants have a meal break policy that requires all non-exempt employees to take a 30-minute unpaid meal break each day.  Yet only <u>drivers</u> are subject to automatic, reversible deductions for meal breaks because they typically eat lunch on their routes, unsupervised, and away from the Amarillo facility, and therefore do not have access to the timeclock during the routes.[28]  Other non-exempt employees, who remain at the Amarillo facility throughout much or all of their shifts, simply clock out for lunch and then clock back in upon resuming their work duties.[29]  While Plaintiffs allege they were "charged for an unpaid lunch break that [they] did not get but the company nevertheless deducted it each day from [their] pay,"[30] the automatic deduction policy did not and does not apply to non-drivers[31].  Moreover, there is no policy (nor have Plaintiffs articulated one) that requires non-exempt employees to work during their meal breaks.  Nor have Plaintiffs presented any proof that other employees they seek to represent work during meal breaks without compensation.  *See Williams v. Accredited Home Lenders, Inc.*, No. 1:05-CV-1681-TWT, 2006 U.S. Dist. LEXIS 50653, at *13-

---

[28] *See* Ex. 1, McMahon Decl., ¶ 9.

[29] *See id.*

[30] Pl. Mot. Appx. Exs. C, D.

[31] *See* Ex. 1, McMahon Decl., ¶ 9

14 (N.D. Ga. July 25, 2006) ("Liability cannot be determined by considering the employee's job duties. Rather, every employee must testify about his awareness of the overtime policy, and his violation of that policy—and whether it was compelled by his or her branch manager. In other words, there must be a fact-specific, individualized inquiry into each Plaintiff's day-to-day activities . . . ."). Simply put, Plaintiffs have not established that they are similarly situated to all other non-exempt employees at the Amarillo facility or were together subject to a common policy or plan requiring employees to work uncompensated meal breaks.

Plaintiffs also cannot establish that they are similarly situated to all other non-exempt employees at the Amarillo facility because drivers have vastly different duties than employees in other positions. Employees in other non-exempt job categories are not and were not required to perform that work duties which Plaintiffs claim to have performed off the clock, including pre- and post-trip truck inspections, fueling, weighing trucks, and related activities.[32] While Plaintiffs allege the time they spent performing this work was "generally not compensated," they fail to explain that only drivers are required to perform this work.[33] Plaintiffs have neither alleged nor demonstrated that non-driver employees were required to perform the same duties—on or off the clock. *See White v. Osmose*, 204 F. Supp. 2d 1309, 1314 (M.D. Ala. 2002) (in an off-the-clock case, a plaintiff must show a "commonality between the basis for his claim and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions, because without such a requirement, it is doubtful that § 216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse").[34] In sum, Plaintiffs have not established that they are similarly situated to all other non-exempt employees

---

[32] See Ex. 1, McMahon Decl., ¶ 5.

[33] Pl. Mot. Appx. Exs. C, D.

[34] *See also Williams*, 2006 U.S. Dist. LEXIS 50653, at *13-14 (observing that "[l]iability cannot be determined by considering the employee's job duties" in concluding that plaintiffs, opt-ins, and proposed class members were not sufficiently similarly situated).

at the Amarillo facility or were together subject to a common policy or plan requiring employees to perform pre- and post- trip inspections and related duties off the clock.

Even if the particular automatic meal break deduction policy and work activities at issue applied to both Plaintiffs and non-driver employees alike (which they do not), conditional certification is inappropriate because Plaintiffs have not shown that those policies or requirements violate the FLSA. Plaintiffs appear to concede—as they must—that for a common policy or plan to bind together a collective of purportedly similarly situated individuals and warrant conditional certification, the common policy or plan must violate the FLSA. Pl. Mem. 4-5; *see, e.g.*, *Nieddu v. Lifetime Fitness, Inc.*, 977 F. Supp. 2d 686, 693, 703 (S.D. Tex. 2013) (denying conditional certification where plaintiffs failed to show that they were "victims of a common plan or policy" of the employer "that violated the FLSA," based on observed distinctions between employees and their duties and mode of compensation, the employer's written policies requiring employees to record all hours to ensure receipt of proper payment, and plaintiff's deposition testimony identifying only one manager that told him not to worry about reporting hours); *Hickson*, 2010 WL 3835887, at *8 (denying conditional certification of a collective of 20,000 postal carriers where 678 already opted-in to the lawsuit because plaintiffs failed to show they were bound by a single policy or plan "that violates the FLSA"). Yet they have not identified any common policy or plan that violates the FLSA and is uniformly applied to the putative collective.

As explained above, Defendants' meal break policy provides that drivers are subject to an automatic, but reversible, 30-minute deduction from their daily electronically-recorded time for meal periods. Numerous courts have recognized that "automatically deducting lunch breaks . . . do[es] not violate the FLSA without more." *MacGregor v. Farmers Ins. Exch.*, 2011 WL

2981466, at *3 (D.S.C. July 22, 2011).[35]

Moreover, Defendants likewise have policies in place prohibiting off-the-clock work, requiring that all non-exempt employees, including drivers, record all time worked, requiring employees to review and verify the accuracy of their work hours each week, including certifying that their hours are accurate each day and they took a meal period each day or that their time card has been adjusted for all missed meal periods, and explicitly providing a process for drivers to reverse the automatic deduction if necessary. *See* Section I, *supra*. Such evidence that an employer has and enforces appropriate pay policies "weighs strongly against conditional certification." *Nieddu*, 977 F. Supp. 2d at 703. Indeed, in these circumstances—where there is a mechanism for employees to reverse the automatic deduction if they have missed the meal break and thus get paid for the time worked—"Plaintiffs' 'must submit evidence that the *reason* why [they] were not compensated for working through meal breaks is because of a corporate decision to ignore [Defendants'] published policies and refuse to pay for working through meal breaks." *Saleen*, 2009 WL 1664451, at *4. Significantly, neither of Plaintiffs' declarations indicates whether they ever used or tried to use Defendants' process for reversing the automatic deduction and, specifically, whether they made such requests but were denied. "Under the FLSA, if an employer establishes a reasonable process for an employee to report uncompensated work time the employer is not liable for non-payment if the employee fails to follow the established process." *White*, 699 F.3d at 876. Accordingly, Plaintiffs have not carried their burden of identifying a common policy or plan in violation of the FLSA. *See Blaney*, 2011 WL 4351631, at *9 (finding plaintiffs were not victims of a common policy that violated the law where there

---

[35] *See, e.g., White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 873 (6th Cir. 2012) ("An automatic meal deduction system is lawful under the FLSA."); *Desilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 27 F. Supp. 3d 313, 321 (E.D.N.Y. 2014) ("automatic meal deduction policies are not *per se* illegal" and, "[w]ithout more . . . cannot serve as the common bond around which an FLSA collective action may be formed"); *Camilotes v. Resurrection Health Care Corp.*, 286 F.R.D. 339, 350 (N.D. Ill. 2012) ("[A]n automatic deduction policy, in and of itself, does not violate the FLSA.") (collecting cases).

was no "evidence of any requests for reversals of the auto-deduction that were denied").

        **2.**      **Plaintiffs Are Not Similarly Situated To Other Drivers At The Amarillo Facility**

Plaintiffs have failed to establish a common policy or plan that violates the FLSA. At most, Plaintiffs identify "'decentralized and independent action by supervisors that is contrary to the company's established policies, [meaning that] individual factual inquiries are likely to predominate and judicial economy will be hindered rather than promoted by certification of a collective action.'" *Blaney*, 2011 WL 4351631, at *9 n.4 (quoting *MacGregor*, 2011 WL 2981466, at *4). Indeed, Plaintiffs' "evidence" in support of conditional certification—two nearly-identical declarations containing vague and conclusory allegations as to each declarant's own actions—confirms this point. Each declaration includes vague, conclusory, and boilerplate allegations that the declarant "was not paid for all the time [he or she] spent working." Pl. Mot. Appx. Exs. C, D. But evidence that two employees merely were not compensated for work is "not sufficient to merit conditional certification of a collective action." *Thompson v. Speedway SuperAmerica LLC*, 2009 WL 130069, at *2 (D. Minn. Jan. 20, 2009). Rather, Plaintiffs must offer evidence that "the *reason* why the employees were not compensated . . . [is] because of a corporate decision to ignore [Defendants'] published policies and refuse to pay for [working through meal periods or performing pre- and post-trip tasks]." *Id.* As this Court has previously noted, a court may deny conditional certification and notice "if the action arises from circumstances purely personal to the plaintiff and not from any generally applicable rule, policy or practice." *Fox v. Western Talk, L.C.*, No. H-12-3726, 2013 U.S. Dist. LEXIS 153892, at *5 (S.D. Tex. Oct. 28, 2013). Without identifying any facts indicative that Plaintiffs' experience was common to other drivers (let alone any of the non-drivers) in Amarillo and explaining the reason why they worked off the clock, skipped meal breaks, and underreported their hours,

Plaintiffs fail to demonstrate that they are similarly situated to even each other, let alone the other drivers of the proposed collective. *Basco*, 2004 WL 1497709, at *5 ("To create a collective action class, including the cost associated with that when a Court is convinced that there is insufficient support for the same prior to certification would be an exercise in futility and wasted resources for all parties involved.").

Particularly instructive is *Saleen v. Waste Management, Inc.*, 2009 WL 1664451 (D. Minn. June 15, 2009). The plaintiffs in *Saleen* moved for conditional certification of a potential class of waste-collection drivers of Waste Management, Inc. ("WMI"), also a national waste-services company. *Id.* at *1-2. The plaintiffs alleged that WMI subjected drivers to an unlawful time-keeping system that automatically deducted 30-minute meal breaks. *Id.* The plaintiffs submitted 112 declarations in support of their motion for conditional collective certification, each of which claimed they worked through meal breaks but were not paid for that time due to the automatic meal deduction policy. *Id.* at *5. From the 112 declarations, the plaintiffs asked the court to infer that WMI "had a common, unlawful policy not to compensate for untaken meal breaks." *Id.* The court refused to draw the inference, finding that the plaintiffs failed to show the *reason* why drivers worked through meal periods without compensation was a single policy or plan and denied conditional certification. *Id.* (stating that a policy to automatically deduct 30 minutes for a meal time regardless of whether the driver took the full break was insufficient to allege a common policy or plan that violated the FLSA: "this case is not about meal-break labor practices; it is about overtime compensation for putatively thousands of individuals, and Plaintiffs' showing demonstrates that there is no single policy about that core issue from which a collective action can emanate").

Plaintiffs here also have failed to identify a common policy that violates the FLSA and

which binds the collective.  Their two declarations do not offer any reason whatsoever for why they allegedly were not paid if and when they worked through lunch, or for why they allegedly were not paid for any pre- and post-trip work activities they performed.  Plaintiffs' identical and boilerplate declarations also fail to explain:

- Why or how he/she worked through lunch on any particular day—*i.e.*, whether the individual's supervisor or someone else directed him/her to work through lunch;

- Whether he/she alerted his/her supervisor that he/she worked through lunch on any particular day or if the supervisor otherwise knew he/she performed work for which he/she was not paid;

- Whether he/she ever requested a reversal of the auto-deduct on any particular day he/she worked through lunch;

- Whether his/her supervisor directed him/her not to request a reversal of the auto-deduct despite knowing he/she worked through lunch;

- Whether his/her request(s) for reversal of the auto-deduct was denied; or

- Whether he/she took advantage of other options (*e.g.,* speaking with Human Resources or the facility General Manager) to request reversal of the auto-deduct on any particular day he/she worked through lunch, and whether any of those requests were denied.

Likewise, with regard to pre- and post-trip work activities, Plaintiffs do not explain:

- How or why his/her activities were not compensated;

- What efforts, if any, he/she made to be compensated for such activities and how Defendants responded to any such efforts; or

- Whether his/her supervisor otherwise knew he/she performed work before or after their routes for which he/she was not paid.

Plaintiffs cannot meet the burden of showing a company-wide policy or plan that violates the FLSA with two cookie-cutter declarations that fail to answer these questions and provide no reason(s) for why drivers allegedly worked through lunch without pay or were not compensated for pre- and post-trip activities.  *See Saleen*, 2009 WL 1664451 at *6; *see also Tussing v. Quality Res., Inc.*, 2009 WL 4350253, at *3 (M.D. Fla. Nov. 25, 2009) (plaintiff's burden not met where affidavits were "not substantial and detailed enough" and were "largely the same affidavit signed by six different employees"); *Adair v. Wis. Bell, Inc.*, 2008 WL 4224360, at *6, *10 (E.D. Wis.

Sept. 11, 2008) (denying conditional certification where vague declarations failed to explain why plaintiffs worked off the clock).  Moreover, Plaintiffs rely *exclusively* on their own individualized and localized testimony to support their allegations; they have not provided declarations or affidavits from any other employees to substantiate their claims.  They have also failed to show (let alone address) that, based on their personal knowledge, other employees were unlawfully denied overtime pay.  Therefore, even if true, Plaintiffs' declarations provide nothing more than anecdotal evidence of an isolated deviation from Defendants' policies; they do not demonstrate a common policy or plan to violate the FLSA.  Because Plaintiffs have failed to meet their burden of showing that they are similarly situated to members of the proposed collective or that they were subject to a common policy or plan that violates the FLSA, conditional certification is inappropriate, even under the lenient standard Plaintiffs advocate.  *See Fox*, 2013 U.S. Dist. LEXIS 153892, at *6.

### C.   Certification Would Make This Case Unmanageable Because It Will Require Highly Individualized Inquiries Regarding Liability And Defenses.

Plaintiffs' allegation that they occasionally worked work off the clock for some undisclosed reason may allow both of them to proceed individually in this case, but their allegations cannot support a collective action because a liability determination for each putative class member's claim would involve numerous, highly individualized and fact-intensive questions.  The case would thus devolve into an unmanageable series of mini-trials.

In order to determine liability, the Court would need to examine the individual circumstances surrounding each driver or employee, including all of the questions highlighted in the preceding section—rather than a uniform policy—to determine whether, to what extent, and why each employee worked off the clock on any given shift or was not compensated during a worked meal break.  In addition, individualized inquiries will be required for each class member

to determine whether a particular manager or supervisor was aware that each of them was working off the clock or missed a meal break but nevertheless ignored that.  These and other individualized inquiries must be conducted on a supervisor-by-supervisor and employee-by-employee basis.  As numerous courts have found in similar cases, because the record demonstrates that there is no common unlawful policy or scheme and instead individualized questions of fact predominate, this case is not an appropriate one for certification.  *See, e.g., Jones v. Xerox Commercial Solutions, LLC*, 2013 U.S. Dist. LEXIS 158793, at \*24 (S.D. Tex. Nov. 6, 2013) (denying certification because plaintiffs' claims and each week's time would need to be assessed through a range of individualized inquiries, such as who logged each plaintiff out, why and when each was logged-out, the reasons that supervisors chose to log-out each employee each day, and whether the employee manually recorded the unlogged time).[36]

Another reason courts regularly decline to certify off-the-clock classes like this one is that employers are entitled to raise claimant-specific defenses of a legal and/or factual nature, which further complicates the significant management problems inherent in collective and class actions.  *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213 n.7 (5th Cir. 1995) ("The disparate individual defenses asserted by [defendant] heightens the individuality of the claims and complicates the significant management problems.").  For example, as to each putative plaintiff, Defendants may argue that:

> (1) the particular [] member did not in fact work off-the-clock, (2) any instructions received to work off-the-clock without compensation were outside the scope of authority . . . (3) [the collective action member] unreasonably failed

---

[36] *See also Carey v. 24 Hour Fitness USA, Inc.*, No. H-10-3009, 2012 U.S. Dist. LEXIS 146471, at \*6-7 (S.D. Tex. Oct. 11, 2012) (denying conditional certification because "[w]hether a Club Manager would be willing to violate … company policy against 'off-the-clock' work … requires an inquiry into the motivation and ethics of each Club Manager"); *Williams*, 2006 U.S. Dist. LEXIS 50653, at \*13-14 (denying certification because "there must be a fact-specific, individualized inquiry into each Plaintiff's day-to-day activities" to determine whether off-the-clock violations existed); *Diaz v. Elecs. Boutique of Am., Inc.*, No. 04-CV-840E(SR), 2005 WL 2654270, at \*5 (W.D.N.Y. Oct. 17, 2005) (denying certification where "Diaz's off-the-clock claims require an examination . . . of when he was scheduled to work, when he actually worked, whether he was paid . . . and whether [his manager] altered his timesheets and, then, the Court would to have conduct the same inquiry as to each other class member").

to avail themselves of curative steps . . . to be compensated for that work, (4) . . . the class member unreasonably relied on instructions directly contrary to [Defendants'] express policy, (5) a [collective action] member had actual and/or constructive knowledge of [Defendants'] policies banning off the clock work . . . and (6) that a particular[collective action] member has a unique animus toward [Defendants' or its] employees that would cause that class member to fabricate or inflate his or her claims.

*Basco v. Wal-Mart Stores, Inc.*, 216 F. Supp. 2d 592, 603 (E.D. La. 2002).

In addition to those mentioned above, other defenses could include, for example:

- Challenging possible representation about the existence and content of any purported oral instructions that contradict Defendants' written timekeeping policies;

- Demonstrating that each employee had knowledge of Defendants' timekeeping policies and policies banning off-the-clock work and requiring them to take a meal break but violated those policies for any one of a number of reasons;

- Responding to each class member's off-the-clock claims, and addressing whether and to what extent each employee was paid for any such work;

- Arguing that any alleged instances of off-the-clock activity did not constitute compensable work under the FLSA or are barred by the Portal-to-Portal Act, 29 U.S.C. § 254, as preliminary or postliminary activities;

- Arguing that any alleged overtime is *de minimis*;

- Showing that Defendants' managers and supervisors did not know about the alleged off-the-clock work and that class members failed to take advantage of Defendants' system of reporting missed meal breaks and/or requesting overtime;

- Showing that, as described above, Defendants have and taken measures designed to prevent drivers from performing pre- and post- trip work off the clock; and

- Demonstrating that each manager or supervisor acted in good faith and that liquidated damages are not appropriate.

These defenses, and others, require highly anecdotal, particularized proof for each opt-in

and provide yet another reason why certification would render a collective trial unmanageable.

*See, e.g.*, *Jones*, 2013 U.S. Dist. LEXIS 158793, at *24-25 (denying certification because

plaintiffs' "claims and each week's time would need to be assessed through a range of

individualized inquiries, such as who logged each Plaintiff out, why and when each Plaintiff was

logged-out, the reasons that . . . supervisors chose to log-out each employee each day, [and]

whether the employee manually recorded the unlogged time").[37]

### III.   Defendants Object To Plaintiffs' Proposed Form Of Notice

If the Court reaches the issue of the form and distribution of notice, the Court should

modify the proposed notice to correct a number of deficiencies and adjust the requested methods

of distribution in order to ensure accurate notice and that potential plaintiffs can make informed

decisions about whether to participate.  These include but are not limited to:

- Plaintiffs' proposed notice tells prospective plaintiffs that "if the workers lose, no money will be awarded . . . ."  Pl. Mot. Appx. at p. 15.  This is misleading because the notice fails to advise putative plaintiffs that they could be liable for Defendants' costs of defending the case if Defendants ultimately prevail in this matter.  *See Behnken v. Luminant Min. Co., LLC*, 997 F. Supp. 2d 511, 524 (N.D. Tex. 2014) (informing potential plaintiffs that taxable costs could be assessed against them is "necessary for someone to make an informed decision about whether to join the lawsuit").  An accurate account of the potential outcomes upon joining the case is essential to allow each individual to make an informed decision about whether to participate.  Thus, the Court should require the notice reflect potential assessment of costs.

- Potential plaintiffs should be notified that they may be required to participate in discovery.  *Behnken*, 997 F. Supp. 2d at 524-25 ("[t]he court directs that the notice form include language that 'individuals joining the lawsuit may be required to give a deposition, respond to written discovery, and testify in court.'").

- Plaintiffs' request that notice be posted at Defendants' Amarillo facility is redundant and unnecessary because distribution by U.S. Mail is sufficient.  *Michael v. Bloomberg L.P.*, No. 14–cv–2657 (TPG), 2015 WL 1810157, at *4 (S.D.N.Y. Apr. 17, 2015).  Moreover, requiring Defendants to post at their own facilities what for all intents and purposes is an attorney's solicitation to join a lawsuit against them, and when there has been no adjudication of liability, poses significant First Amendment compelled speech concerns.

- The request for "last four of social security numbers, and telephone numbers" is inappropriate given the private nature of the information. *See, e.g.*, *Fox*, 2013 U.S. Dist. LEXIS 153892, at *9-10 (granting conditional certification, but denying request for disclosure of telephone numbers and email addresses of putative class members in FLSA); *Lopez v. Bombay Pizza Co.*, No. H-11-4217, 2012 U.S. Dist. LEXIS 158077, at

---

[37] In addition, proof of damages in this case will be highly individualized, rendering it nearly impossible to try this case as a class.  Because overtime calculations under the FLSA are made on a workweek basis, the fact-finder will have to reconstruct each putative plaintiff's daily and weekly work schedules to determine whether each individual plaintiff is entitled to overtime compensation on any given week.  Because each driver's workday varies significantly, this endeavor alone will make a collective trial unmanageable.  Thus, if liability is found, the issue of "damages would necessarily require a case-by-case inquiry, thereby rendering it impossible to try this case as a collective class."  *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 511 (M.D. La. 2005) ("If liability is found, damages would necessarily require a case-by-case inquiry, thereby rendering it impossible to try this case as a collective class.").

*8-9 (S.D. Tex. Nov. 5, 2012) (granting conditional certification, but denying request for disclosure of telephone numbers, email addresses, and social security numbers of putative class members).  Moreover, providing telephone numbers for purposes of contacting prospective plaintiffs is unnecessary because distribution by U.S. Mail is sufficient.

- Plaintiffs' proposed notice dedicates 12 lines of text laying out Plaintiffs' allegations and theory of the case.  Many of the statements regarding Defendants' alleged actions or omissions lack language clearly qualifying them as allegations not ruled on or analyzed by the Court.  In contrast, the proposed notice states Defendants' position in four words: "Defendants oppose this lawsuit."  The language of the proposed notice is inappropriate because it provides only a subjective one-sided description of the case and does not contain sufficient language regarding Defendants' position.  *See Heaps v. Safelite Solutions, LLC*, No. 2:10-CV-729, 2011 U.S. Dist. LEXIS 40089, at *23-24 (S.D. Ohio Apr. 5, 2011) (allowing defendant to include a brief statement of its position in notice of lawsuit).

- The contact information for Defendants' counsel should also be included in the notice.  *See Fox*, 2013 U.S. Dist. LEXIS 153892, at *11-12 (granting defendant's request to include defense counsel's contact information on the notice).

- Because Plaintiffs have presented no evidence that Defendants acted willfully in any class-wide violation, any class period should be limited to the default statute of limitations period.  Hence, any notice should be issued only to those individuals who worked for Defendants during the two years before issuance of the notice.[38]

Rather than burden the Court with every deficiency at this stage, Defendants request that the Court allow the parties to meet and confer on these issues, and then submit a joint proposed notice form within 15 days of the Court's ruling, should the Court be inclined to facilitate class notice.  Any issues that the parties cannot agree upon would then be submitted to the Court for a ruling on the appropriate form and procedure for notice.  *See, e.g.*, *Cruz v. ConocoPhillips*, 2016 WL 7106363, at *4 (S.D. Tex. Sept. 23, 2016) (ordering the parties to confer about the content of notice and method for distribution and to provide the court a proposed notice).

## CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court deny Plaintiffs' Motion for Order Authorizing Notice to Potential Plaintiffs (Dkt. 13).

---

[38] For the reasons discussed in Section II, *supra*, Defendants further object to the scope (specifically, relating to geographic area and job classifications of recipients) of the proposed notice.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of April, 2017, I electronically filed the foregoing

document with the Clerk's Office using the CM/ECF system, which will send a notification of

such filing to the following:

Philip R. Russ
Law Offices of Philip R. Russ
2700 S. Western, Suite 1200
Amarillo, Texas 79109


/s/ Austin J. Brayley
Austin J. Brayley